# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

*vs*.                                                         **CRIMINAL ACTION NO. 1:10cr65**

**MARK A. RACKLEY,**

      **Defendant.**

## ORDER/OPINION GRANTING DEFENDANT'S MOTION FOR LEAVE TO SERVE RULE 17(c) SUBPOENAS

On the 20th day of August 2010, the Defendant, through counsel, filed a Motion for Leave to Serve Rule 17(c) Subpoenas [Docket Entry 20]. On August 30, 2010, the United States, through its Assistant United States Attorney, filed its Response to the Motion [Docket Entry 27].

Defendant seeks to serve subpoenas on Mylan, Inc., ("Mylan") and Enterprise Fleet Services ("Enterprise"). Defendant is charged with mail fraud in violation of 18 U.S.C. section 1341. The charges involve an alleged scheme by Defendant to defraud Mylan in connection with the purchase and sale of automobiles by Enterprise for use in Mylan's fleet. In his Motion, Defendant argues that records of Mylan and Enterprise relating to purchases and sales of automobiles by Enterprise for use by Mylan are relevant to his defense. Defendant further states that the discovery produced by the government does not include complete records of the transactions at issue, and that judicial economy and fairness require the materials be subpoenaed from Mylan and Enterprise a sufficient period of time prior to trial so Defendant can prepare to use these as needed in an orderly and effective manner at trial. F.R.Cr.P. 17(c) provides:

> A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. <u>The court may direct that books, papers, documents or</u>

> objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

A subpoena for documents may be quashed if their production would be "unreasonable or oppressive," but not otherwise. In Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951). Bowman recognized two fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, and (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.

In United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court found that the moving party must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity. In fn.11 of the Decision, the Court noted a statement the District Court quoted from of a member of the advisory committee that the purpose of the rule was to bring documents into courts "in advance of the time that they are offered in evidence, so that they may then be inspected in advance, for the purpose . . . of enabling the party to see whether he can us (them) or whether he wants to use (them)." 341 U.S., at 22, n.5, 71 S.Ct. at 678. "The Manual for Complex and Multidistrict Litigation published by the Federal Judicial Center recommends that use of Rule 17(c) be encouraged in complex criminal cases in order that each party may be compelled to produce its documentary evidence well in advance of trial and in advance of the time it is to be offered."

Although this case has not been designated as complex and does not involve multidistrict litigation, according to the parties themselves the case involves some 27,000 pages of documents have been produced "thus far." Trial is in less than three weeks. There is no argument from the

Government that the subpoenas could not be properly used to bring evidence to trial, but that the Court should not permit this early production.

In the normal criminal case in which this type of subpoena becomes an issue, the subpoenas are directed to one of the parties. In this case the subpoenas are directed to third parties, Mylan and Enterprise. Interestingly, in <u>Nixon</u>, the district court had found that it was faced with "the more unusual situation . . . where the subpoena, rather than being directed to the government by defendants, issues to what, as a practical matter, is a third party." The Special Prosecutor, who was seeking the production, suggested that the evidentiary requirements did not apply as vigorously "when the subpoena duces tecum is issued to third parties rather than to government prosecutors." The Supreme Court stated, however:

> We need not decide whether a lower standard exists because we are satisfied that the relevance and evidentiary nature of the subpoenaed tapes were sufficiently shown as a preliminary matter to warrant the district Court's refusal to quash the subpoena.

Although the movant could not describe the contents of the subpoenaed tapes fully, the Court found "there was a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment." Further, "there was a sufficient preliminary showing that each of the subpoenaed tapes contain[ed] evidence admissible with respect to the offense charged in the indictment. The Court also found there were other "valid potential evidentiary uses for the [] material, and the analysis and possible transcription of the tapes may take a significant period of time." Accordingly the Court could not conclude that the District Court erred in authorizing the issuance of the subpoena duces tecum.

The Court in this case has reviewed the subpoenas requested by Defendant, and finds that, although there is no guarantee all or any of the material is relevant, "there [is] a sufficient likelihood"

3

that the materials requested "contained admissible evidence with respect to the offense charged in the indictment." Further, analysis of the materials may take a significant period of time. Finally, the Court finds the subpoenas are sufficiently specific, i.e., they appear to be "made in good faith and not intended as a general 'fishing expedition.'"

"The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." F.R.Cr.P. 17(c). The requests do not appear on their face to be overly burdensome or oppressive; however, the recipients of the subpoenas may a different opinion. That possibility actually cuts in favor of granting the early production, as any problems with the production at this point or even later in the proceedings could interfere with the trial itself. "The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys." Id. The intent of the Rule was to bring documents into courts "in advance of the time that they are offered in evidence, so that they may then be inspected in advance, for the purpose . . . of enabling the party to see whether he can use (them) or whether he wants to use (them)."

The Court finds it would be advantageous in this case, which appears at this point to involve thousands of documents, for the parties to be able to inspect the requested documents in advance to determine whether they will or can be used.

The Court notes that the subpoenas direct the production of the requested materials at the Defense counsel's office. Rule 17(c), however, calls for production before the court. The court, upon production of the materials, then <u>may permit the materials to be inspected by the parties and</u>

their attorneys.

Upon consideration of all which, the Court **GRANTS** Defendant's Motion for Leave to Serve Rule 17(c) Subpoenas [Docket Entry 20].  The subpoenas must be rewritten, however, to command production at the court.

**IT IS SO ORDERED**.

The Clerk for the United States District Court for the Northern District of West Virginia is directed to provide a copy of this order to counsel of record.

DATED: September 22, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE